IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DARIUS J. RICHARDS,           )
                                       )
       Plaintiff,                )
                                       )
v.                                 )          Civil Action No. 3:19CV698
                                       )
SGT WILLIAMS, *et al.*,        )
                                       )
       Defendants.         )

## MEMORANDUM OPINION
### (Granting Motion for Summary Judgment)

Darius J. Richards, a Virginia inmate proceeding *pro se* and *in forma pauperis*,

filed this civil action under 42 U.S.C. § 1983.[1] The action proceeds on Richards's

Amended Complaint ("Complaint," ECF No. 13).[2] The Court construes Richards to raise

the following claims for relief:

> Claim One:   On May 30, 2019, after a fight amongst inmates in the medical
>                   infirmary dormitory unit, Defendants Williams, Belshine, and

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects,
> or causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law . . . .

42 U.S.C. § 1983.

[2] Richards names the following individuals who work at Sussex I State Prison ("Sussex") as
Defendants: Sergeant Williams, Assistant Warden Anthony D. White, Major Ruffin, Lieutenant
Ricks, Sergeant Evans, Officer Sloan, Officer Belshine, Officer Gbeddy, Counselor VanCampen,
Nurse Ellis, Nurse Smith, and Nurse Allen. It is unclear whether Officer Gbeddy's name is
spelled, "Gbeddy" or "Gebettie." The Court utilizes the spelling of the name from counsel's
"Notice of Appearance." (ECF No. 17.) Defendants Williams, Belshine, Ellis, Smith, and Allen
have not been served.

> Gbeddy violated Richards's rights under the Eighth Amendment[3] when they used excessive force during his extraction from the infirmary. (*Id.* at 14.)

Claim Two:   Defendants Williams, Belshine, and Gbeddy committed assault and battery against Richards. (*Id.*)

Claim Three: Defendants White, Ruffin, Evans, Williams, Vancampen, Sloan, Ellis, Smith, and Allen denied Richards medical care after the excessive force in violation of the Eighth Amendment. (*Id.*)

Richards seeks damages and declaratory judgment. (*Id.* at 16.) The matter is now before the Court on the Motion for Summary Judgment filed by Defendants White, Ruffin, Ricks, Evans, Sloan, Gbeddy, and Vancampen. (ECF No. 21.)[4] Despite the provision of *Roseboro*[5] notice, Richards has not filed a response to the Motion for Summary Judgment. For the reasons stated below, the Motion for Summary Judgment will be granted, and Richards's claims will be dismissed because Richards failed to exhaust his administrative remedies.

## I.     SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the

---

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.

[4] Under Federal Rule of Civil Procedure 4(m), Richards had ninety days to serve Defendants. Here, that period commenced on July 30, 2020. More than ninety days have elapsed, and Richards has not served Defendants Williams, Belshire, Ellis, Smith, and Allen. The Court will direct Richards to show cause why he has not served these Defendants in a separate Memorandum Order.

[5] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendants White, Ruffin, Ricks, Evans, Sloan, Gbeddy, and Vancampen ("Defendants") ask the Court to dismiss Richards's claims because Richards failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their Motion for Summary Judgment, Defendants submit: (1) an affidavit from E. Witt, the Institutional Ombudsman at Sussex I State Prison (("Witt Affidavit"), ECF No. 22–1 at 1–6); (2) a copy of Operating Procedure 866.1, Offender Grievance Procedure (ECF No. 22–1 at 7–20); (3) a copy of an Informal Complaint submitted by Richards (ECF No. 22–1 at 21); (4) a copy of a Grievance Receipt (ECF No. 22–1 at 22.); and, (5) a copy of a Regular Grievance submitted by Richards (ECF No. 22–1 at 23–24).

At this stage, the Court is tasked with assessing whether Richards "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). Generally, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Richards failed to respond to the Motions for Summary Judgment, thereby failing to cite to any evidence that he wishes the Court to consider in opposition. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in

deciding a motion for summary judgment). Richards's complete failure to present any

evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely

solely on Defendants' submissions in deciding the Motion for Summary Judgment. *See*

*Forsyth*, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3) ("The court need only consider the

cited materials . . . .").[6]

In light of the foregoing principles and submissions, the following facts are

established for the purposes of the Motion for Summary Judgment. All permissible

inferences are drawn in favor of Richards.

## II.   RELEVANT FACTS

### A.   VDOC's Grievance Procedure

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism

used to resolve inmate complaints in the VDOC. (Witt Aff. ¶ 4.) Offenders are oriented

---

[6] Richards submitted an unsworn Complaint. Instead of swearing to the contents, he merely states that the "facts stated in this complaint are true to my personal knowledge and that any facts stated on information and belief are true to the best of my knowledge." (ECF No. 13 at 17.) Such a statement fails to transform the allegations in the Complaint into admissible evidence. *Hogge v. Stephens*, No. 3:09cv582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury but made upon information and belief as "mere pleading allegations" quoting *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2011))). Moreover, the notary public's stamp does not indicate that an oath was administered, but rather that the signature was merely acknowledged before a notary. In an acknowledgement, unlike a jurat, the affiant does not swear under oath nor make statements under penalty of perjury. *See Strong v. Johnson*, 495 F.3d 134, 140 (4th Cir. 2007) (explaining that a jurat uses words "subscribed and sworn" and demonstrates an oath was rendered); *Goode v. Gray*, No. 3:07cv189, 2009 WL 255829, at *2 n.6 (E.D. Va. Feb. 3, 2009). Because Richards failed to swear to the contents of his Complaint under penalty of perjury, the Complaint fails to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).
Even if the Complaint had been sworn to under penalty of perjury, it does not address Defendants' argument that he failed to exhaust his administrative remedies. At most, he states, "Plaintiff has [gone] through the proper channels to exhaust his administrative remedies with respect[] to each claim." (ECF No. 13 at 14.) As discussed below, the record fails to bear out that this is true.

to the Offender Grievance Procedure when they are initially received into the VDOC.
(*Id.* ¶ 10.)  Operating Procedure § 866.1 requires that, before submitting a formal
grievance, the inmate must demonstrate that he has made a good faith effort to resolve the
grievance informally through the procedures available at the institution to secure
institutional services or resolve complaints.  (Operating Procedure § 866.1.V.A.)
Generally, a good faith effort requires that the inmate submit an informal complaint form.
(*Id.* § 866.1.V.A.1–2.)  If the informal resolution effort fails, the inmate must initiate a
regular grievance by filling out the standard "Regular Grievance" form.
(*Id.* § 866.1.VI.A.2.)

"The original *Regular Grievance* (no photocopies or carbon copies) should be
submitted by the offender through the facility mail system to the Facility Unit Head's
Office for processing by the Institutional Ombudsman/Grievance Coordinator."
(*Id.* § 866.1.VI.A.2.b.)  The inmate must attach to the regular grievance a copy of the
informal complaint or other documentation demonstrating their attempt to informally
resolve the issue. (*Id.* § 866.1.VI.A.2.a.)  Additionally, "[i]f 15 calendar days have
expired from the date the *Informal Complaint* was logged without the offender receiving
a response, the offender may submit a *Grievance* on the issue and attach the *Informal
Complaint* receipt as documentation of the attempt to resolve the issue informally." (*Id.*
§ 866.1.V.A.3.)  A formal grievance must be filed within thirty days from the date of the
incident or occurrence, or the discovery of the incident or occurrence, except in instances
beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in on the day it is received, and a "Grievance Receipt" is issued to the inmate within two days. (*Id.* § 866.1.VI.B.3.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.4.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.5.)

### 2. Grievance Appeals

Up to three levels of review exist for a regular grievance. (*Id.* § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.VI.C.1.) If the offender is dissatisfied with the determination at Level I, he or she may appeal the decision to Level II, a review of which is conducted by the Regional Administrator, the Health Services Director, the Superintendent for Education, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she "qualifies for" an appeal to Level III. (*Id.* § 866.1.VI.C.2.g.) "In order to satisfy the exhaustion requirement, the offender must submit his complaint by filing a regular grievance with the appropriate information complaint, and appeal it through all available appeal levels." (Witt Aff. ¶ 9.)

**B.     Facts Pertaining to Richards's Exhaustion of Administrative Remedies**

Richards submitted an Informal Complaint dated June 12, 2019, in which he
complained that, on May 30, 2019, Defendant Williams "removed him from his
wheelchair without provocation and punched him in the face and head area, and that
other officers twisted his newly surgically repaired left knee." (Witt Aff. ¶ 11; *see* ECF
No. 22–1 at 21.)  The Sussex Grievance Office received and date-stamped the Informal
Complaint on June 18, 2019, and it was forwarded to the Intel Department and date
stamped on June 20, 2019.  (Witt Aff. ¶ 12; *see* ECF No. 22–1 at 21.)  The Grievance
Office date stamps informal complaints on the same day that they are received.  (Witt
Aff. ¶ 12; *see* ECF No. 22–1 at 21.)  The Grievance Office issued Richards a Grievance
Receipt that indicated that the Grievance Office received the Informal Complaint on June
18, 2019.  (Witt Aff. ¶ 12; *see* ECF No. 22–1 at 22.)  On June 20, 2019, Investigator
Brown responded to the Informal Complaint and explained that Richards was "part of a
cell entry" and he "refused to comply [with the] order and the [extraction] team was
used." (ECF No. 22–1, at 21.)

Richards drafted and signed a Regular Grievance on June 26, 2019.  (Witt Aff.
¶ 14; ECF No. 22–1 at 23.)  The Regular Grievance was received in the Grievance Office
and date-stamped on July 1, 2019.  (Witt Aff. ¶ 14; ECF No. 22–1 at 23.)  Richards
complained that, on May 30, 2019, Sergeant Williams removed him from his wheelchair,
"punched him in his face and head area, that other officers twisted and bent backwards
his surgically repaired left knee, and that the officers knew he was in the infirmary to

recover from knee surgery. Richards further stated that he was not provided any medical attention for his pain and injuries." (Witt Aff. ¶ 14; ECF No. 22–1 at 23.)

Ms. Moseley, the Alternate Grievance Coordinator, did not accept the Regular Grievance during the intake process because the filing period for a Regular Grievance had expired. (Witt Aff. ¶ 15; ECF No. 22–1 at 23.) It is the practice of the Grievance Officer to date stamp Regular Grievances the same day that they are received, and Richards's Regular Grievance was received, based on the date-stamp, on July 1, 2019. (Witt Aff. ¶ 15; ECF No. 22–1 at 23; Operating Procedure § 866.1.VI.B.1.) Ms. Moseley noted on the grievance form that the incident had occurred on May 30, 2019, and that the filing period had expired. The rejected Regular Grievance was returned to Richards. (Witt Aff. ¶ 15; ECF No. 22–1 at 24.) Regular grievances must be filed within thirty days from the date of occurrence. (ECF No. 22 at 6.) "Even though Richards may have dated his Regular Grievance June 26, 2019, (Wednesday), it was received in the Grievance Office on July 1, 2019, (Monday) which was more than 30 days from the date of occurrence (May 30, 2019)." (Witt Aff. ¶ 16.) Witt avers that: "The date a regular grievance is *received* in the Grievance Office is the date used to determine if an offender has met the 30[-]day filing requirement." (*Id.* (emphasis added).)

## III.   EXHAUSTION ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a

9

prisoner to exhaust the grievance procedures offered, whether or not the possible

responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S.

731, 738 (2001). Generally, to satisfy the exhaustion requirement, an aggrieved party

must file a grievance raising the claim and pursue the grievance through all available

levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548

U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires

proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion

demands compliance with an agency's deadlines and other critical procedural rules," *id.*

at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v.*

*McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define

the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement.

*Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Here, Richards failed to exhaust his administrative remedies with respect to his

claims. Richards's Regular Grievance was rejected because it was untimely filed.[7]

---

[7] The Court notes that Richards attached a letter to the original Complaint addressed to the
Eastern Regional Ombudsman, that states: "I did submit my grievance on time, ie. June 26,
2019. . . . I cannot control the route of the mailing and how fast or slow it [is] processed. All I
can do is hand it to the floor officer to be submitted in the mail bag or box." (ECF No. 1–4, at 3–
4.) However, he did not include these allegations at all, much less with any sworn factual detail,
in either of his Complaints.

    "[A]n administrative remedy is not considered to have been available if a prisoner,
through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517
F.3d 717, 725 (4th Cir. 2008) (citations omitted). To excuse compliance with a grievance
system, courts have required an inmate show that he was prevented from filing a grievance by
affirmative action on the part of prison officials. *Graham v. Cnty. of Gloucester, Va.*, 668 F.
Supp. 2d 734, 738 (E.D. Va. 2009) (citations omitted). However, Richards failed to respond to
the Motion for Summary Judgment at all, much less with admissible evidence showing that he
was prevented from exhausting his administrative remedies by an affirmative action of prison

Richards failed to comply with the VDOC's procedural rules and thus, his complaint could not be addressed on its merits as is required for proper exhaustion. *Woodford*, 548 U.S. at 90 (emphasis in original) (explaining that an inmate must use administrative remedies "*properly* (so that the agency addresses the issues on the merits)"). The record therefore establishes that Richards failed to comply with 42 U.S.C. § 1997e(a) and his claims are not properly exhausted. *See Woodford*, 548 U.S. at 90. Accordingly, Richards's claims will be dismissed without prejudice. *See Duncan v. Clarke*, No. 3:12CV482, 2015 WL 75256, at *9 (E.D. Va. Jan. 6, 2015) (explaining that "the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice" (citing *Booth*, 532 U.S. at 735)).

## IV.   CONCLUSION

Accordingly, the Motion for Summary Judgment (ECF No. 21) will be granted. The claims against Defendants White, Ruffin, Ricks, Evans, Sloan, Gbeddy, and Vancampen will be dismissed without prejudice.

An appropriate Order shall accompany this Memorandum Opinion.

/s/

Date: April 12, 2021
Richmond, Virginia

HENRY E. HUDSON
SENIOR UNITED STATES DISTRICT JUDGE

---

officials. And, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). Thus, due to perceived lack of interest in litigating this action on Richards's behalf, the Court is not inclined to construct an opposition for him. Nevertheless, it is appropriate to dismiss Richards's claims without prejudice at this juncture.